UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KYLE STEVEN T.,[1]

                  Plaintiff,

v.

LELAND DUDEK, Acting
Commissioner of Social Security
Administration,[2]

                  Defendant.

Case No. 1:24-cv-00144-CWD

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

Plaintiff filed a Complaint seeking judicial review of the Commissioner's denial of his applications for a period of disability and disability insurance benefits, and supplemental security income, under Titles II and XVI of the Social Security Act. (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 15, 16, 18.) Having carefully reviewed

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Leland Dudek was named Acting Commissioner of Social Security Administration on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek will be substituted as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the parties' memoranda and the entire administrative record (AR), the Court will reverse and remand[3] the decision of the Commissioner as explained below.

## BACKGROUND

On May 22, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, claiming disability beginning April 1, 2019. (AR 15, 265 – 273, 1098, 1115.) At the time of the alleged disability onset date, Plaintiff was 31 years of age. (AR 29.)

The application was denied initially and on reconsideration, and a hearing was conducted by video on May 6, 2021, before an Administrative Law Judge (ALJ). (AR 15, 32 – 62.) After considering testimony from Plaintiff and a vocational expert (VE), the ALJ issued a decision on June 22, 2021, finding Plaintiff had not been under a disability since April 1, 2019, through the date of the decision. (AR 15 – 26, 1152 – 1171.) Plaintiff timely requested review by the Appeals Council, which denied his request for review on May 20, 2022. (AR 1172 – 1178.)

Plaintiff timely appealed the Commissioner's decision to the Court on July 20, 2022. *See* Case No. 1:22-cv-299-REP. Following a stipulated motion to remand, the Court entered judgment in favor of Plaintiff on February 2, 2023, reversing and remanding the matter for further administrative proceedings. (AR 1179 – 1180.) The Appeals Council vacated the prior decision, remanded the case to an ALJ to resolve several issues, and directed that the claimant have the opportunity for a new hearing. (AR

---

[3] All parties consented to the jurisdiction of a magistrate judge to hear and decide all matters in this proceeding. (Dkt. 7.) 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

1188 – 1193.) The Appeals Council further ordered the ALJ to obtain updated consultative examinations, "if warranted." (AR 1191.)

A hearing was conducted by video on November 9, 2023, before a second ALJ. (AR 1098, 1123 – 1151.) After considering testimony from Plaintiff and a second vocational expert (VE), the ALJ issued a decision on January 17, 2024, finding Plaintiff had not been under a disability since April 1, 2019, through the date of the decision. (AR 1095 – 1122.) Plaintiff bypassed written exceptions, and the Appeals Council took no action. (AR 1095 – 1122.) Accordingly, the ALJ's 2024 decision became the agency's final decision. (AR 1095 – 1122.)

Plaintiff timely appealed the Commissioner's final decision to the Court on March 18, 2024. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court must uphold the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

**MEMORANDUM DECISION AND ORDER - 3**

(2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## THE ALJ'S ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step[4]

---

[4] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v)."

MEMORANDUM DECISION AND ORDER - 4

sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Preliminarily here, the ALJ considered whether to order a new consultative examination. The ALJ declined to do so, on the grounds that the "medical evidence of record contains ample evidence including physical examination, diagnostic examination, and ongoing treatment records that included physical and mental status examination reports." (AR 1098.) As to Plaintiff's physical limitations, the ALJ stated that, while "physical examination findings showed some loss of range of motion of the left knee," they did not "include findings consistent with the claimant's allegations of significant difficulty in functioning, significant reduction in physical capacity, severe pain, and other symptoms after his knee injury." (AR 1098.)

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2019, the alleged onset date. (AR 1101.)

At step two, the ALJ found Plaintiff had the following medically determinable, severe impairments: "lumbar degenerative disc disease, osteoarthritis of the left knee status post fracture and surgical repair, obesity, major depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD)." (AR 1101.) The ALJ found Plaintiff's migraines, hypertension, and diarrhea conditions non-severe. (AR 1101.)[5]

---

[5] In the prior decision, the ALJ found Plaintiff had the following medically determinable, severe impairments: "left knee fracture status post surgery, obesity, major depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD)." (AR 18.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or were medically equal to a listed impairment. (AR 1102 – 1105.) The ALJ indicated he considered the listings pertaining to physical and mental impairments. (AR 1102 – 1105.)

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform light work[6] as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following physical limitations:

> He can stand and/or walk for 4 hours in an 8-hour workday and sit for 8 hours in an 8-hour workday. He can never climb ladders, ropes, and scaffolds. He can occasionally climb ramps and stairs. He can occasionally stoop, crawl, and kneel. He can tolerate occasional exposure to vibration and extreme cold. He can tolerate occasional exposure to hazards, such as unprotected heights and moving mechanical parts.

(AR 1105.)[7]

---

[6] The Dictionary of Occupational Titles defines light work as follows:

> Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Dictionary of Occupational Titles Appendix C-Components of the Definition Trailer, 1991 WL 688702. The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10, *available at* 1983 WL 31251.

[7] The RFC included also several mental limitations. However, Plaintiff does not challenge the ALJ's finding with respect to the mental RFC. In the prior decision, the ALJ also determined Plaintiff retained the physical RFC to perform light work, except that he could "stand and/or walk for four hours in an eight hour workday; can sit up to eight hours in an eight hour workday; can never climb ladders, ropes, or scaffolds; can occasionally climb stairs; [and] can occasionally crawl…." (AR 20.)

**MEMORANDUM DECISION AND ORDER  - 6**

The ALJ found that Plaintiff was unable to perform his past relevant work as a phone banker, warehouse worker/stocker, dog boarder, customer service representative, and food deliverer. (AR 1113.) Relying upon testimony from the VE, the ALJ found at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform given his age, education, work experience, and RFC, such as: copy machine operator, electrode cleaner, and electronic inspector. (AR 30.) The ALJ therefore determined that Plaintiff had not been under a disability from April 1, 2019, through January 17, 2024, the date of the decision. (AR 1115.)

## DISCUSSION

Plaintiff raises the following issues on appeal:

1.      Whether the ALJ erred because he failed to order a physical consultative examination, and crafted an RFC without underlying support; and,

2.      Whether the ALJ erred in his evaluation of the Plaintiff's subjective symptom testimony concerning his physical impairments.

Consequently, Plaintiff contends the RFC was not supported by substantial evidence. Plaintiff raises no further issues on appeal.

Because the Court finds an adequate basis for remand on the ground that the RFC lacks sufficient evidentiary support, the Court will not reach the second issue raised on appeal. *See Hiler v. Astrue*, 687 F. 3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative grounds for remand.").

**MEMORANDUM DECISION AND ORDER  - 7**

1.     **Legal Standard**

Residual functional capacity (RFC) is "the most [a claimant] can still do despite

[his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part

404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to

which the individual retains the capacity for sustained performance of the physical-

mental requirements of jobs"). The ALJ must consider "all of [a claimant's] medically

determinable impairments," whether severe or not, when assessing a RFC. 20 C.F.R. §§

405.1545(a)(2), 416.945(a)(2).

A claimant's residual functional capacity is not a medical opinion, but is an issue

to be decided by the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Rounds v. Comm'r of*

*Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for

translating and incorporating clinical findings into a succinct RFC."). However, the RFC

finding must be supported by substantial evidence in the record and the ALJ must explain

his or her reasoning underlying the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c,

416.920c.

In formulating an RFC, the ALJ evaluates medical and other source opinions, as

well as the claimant's statements about the severity of his symptoms. *See e.g., Bray v.*

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The ALJ may properly

reject a medical source opinion that is unsupported by objective medical evidence or is

inconsistent with evidence from other sources. 20 C.F.R. §§ 404.1520c(b)(2);

416.920c(b)(2). However, the ALJ may not arbitrarily substitute his or her own judgment

for competent medical opinion, make independent medical findings, or assess an RFC

that is not supported by the medical evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1102–03

(9th Cir. 1999) (ALJ may not substitute his own interpretation of the medical evidence

for the opinion of medical professionals); *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106

(C.D. Cal. 2008) ("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw

medical data in functional terms.'"); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D.

Cal. 2006) (An ALJ cannot arbitrarily substitute his or her own judgment for competent

medical opinion, and must not "succumb to the temptation to play doctor and make [his

or her] own independent medical findings.").

## 2.    Analysis

Plaintiff argues the ALJ erred by acting as his own medical expert in determining

Plaintiff was able to sustain full-time competitive employment at the light exertional level

with additional limitations without any supporting medical opinion, and based solely

upon the ALJ's independent evaluation of Plaintiff's physical limitations. Pl.'s Brief at 10

– 12. (Dkt. 15.) Specifically, Plaintiff asserts the ALJ abdicated his duty to develop the

record following his rejection of the medical opinion evidence. *Id.* In response,

Defendant contends the record was fully developed, and supported a disability finding

without the need for a consultative examination. Def.'s Brief at 2 – 4. (Dkt. 16.)

Two medical opinions were presented in this case addressing Plaintiff's physical

impairments and limitations. The State agency medical consultants, Leslie Arnold, M.D.,

and Myung Song, D.O., evaluated the medical evidence at the initial and reconsideration

levels on August 6, 2019, and January 6, 2020, respectively. (AR 65 – 88.) The

evaluations followed Plaintiff's May 9, 2019 surgery for left patellar fracture and

**MEMORANDUM DECISION AND ORDER  - 9**

ligament repair. (AR 78.) Neither physician offered an opinion of Plaintiff's RFC, and they both concluded a consultative examination would be required, because "the additional evidence needed is not contained in the records of the individual's medical sources." (AR 75 – 76, 86 – 87.) Nonetheless, both were of the opinion that Plaintiff's physical limitations resulting from his knee condition would become "non-severe 12 months after onset," and therefore recommended denial of the disability claim. (AR 76 – 77, 87 – 88.)

The ALJ found neither physician's findings persuasive, because they did not adequately consider Plaintiff's subjective complaints, the cumulative effect of his symptoms, or the longitudinal record. (AR 1113.) No other medical opinions are contained in the record. Yet, the ALJ crafted an RFC, stating that the "minimal objective findings and conservative treatment measures as well as the claimant's ability to work[8] are indicative of his ability to perform work at the light exertional level with additional postural, environmental, and mental limitations as provided in the residual functional capacity…." (AR 1112.)

Defendant argues that medical records after 2019 show improvement in Plaintiff's knee condition, just as Drs. Arnold and Song predicted, thereby supporting the ALJ's decision. However, Defendant overlooks that the ALJ found Plaintiff's osteoarthritis of the left knee status post fracture and surgical repair severe more than twelve months after the alleged disability onset date. (AR 1101.) This finding contradicts the opinions of Drs.

---

[8] Plaintiff's treatment providers charted that Plaintiff reported working at a laundromat and managing an RV park after the alleged onset date. (AR 1112, 1614.)

**MEMORANDUM DECISION AND ORDER - 10**

Arnold and Song that Plaintiff's physical limitations caused by his knee condition would become non-severe within twelve months after onset.

Furthermore, Plaintiff was later treated for sudden onset of low back pain in the emergency department on September 29, 2023, which Plaintiff described as worsening over time. (AR 1593 – 1594, 1614.) Plaintiff was observed having difficulty walking due to pain. (AR 1594.) MRI results dated September 29, 2023, revealed degenerative changes with disc extrusions, specifically central disc protrusion and disc bulge with facet hypertrophy and mild canal and bilateral foraminal stenosis at the L3-L4 level; disc desiccation, disc flattening, and central disc protrusion at the L4-L5 level; and left paracentral disc protrusion with disc bulge, facet hypertrophy, and mild narrowing of the left subarticular zone at the L5-S1 level. (AR 1597, 1600.)

On October 19, 2023, Plaintiff described his symptoms to his physical therapist as cramping in the low back, and pain with hip flexion, sitting and prolonged walking. (AR 1614.) Plaintiff's treatment provider charted that Plaintiff exhibited limited hip and lumbar range of motion, limited functional capacity, weakness of the left lower extremity, and postural/gait deviations which limited his ability to sit, prolong stand or walk, and work. (AR 1615.) Records documenting further treatment of Plaintiff's low back pain are limited, considering the ALJ rendered a decision on January 17, 2024. (AR 1095 – 1122, 1610.)[9]

---

[9] There is a second treatment note by Plaintiff's physical therapist dated November 2, 2023, which charts that Plaintiff reported improvement in his pain levels since the onset date, and that Plaintiff performed interventions well with minimal symptoms. (AR 1610.) Nonetheless, the treatment provider charted that Plaintiff demonstrated hypertonicity of lumbar paraspinal muscles, glute weakness, and mobility deficits. (AR 1610.) This appears to be the last treatment note addressing Plaintiff's low back pain.

**MEMORANDUM DECISION AND ORDER - 11**

Despite the ALJ's conclusion that Plaintiff's osteoarthritis of the left knee and lumbar degenerative disc disease, which was not present at the time Drs. Arnold and Song evaluated the record, were severe, the ALJ did not retain a consultative medical expert to testify during the hearing or otherwise examine Plaintiff. Not only did the ALJ disagree with the prior medical opinions, he also made findings inconsistent with them. Yet, the ALJ fashioned an RFC concluding Plaintiff had the capacity to perform light work with additional limitations. (AR 1105.)

It is unclear from the written decision how, or upon what evidence in the record, the ALJ assigned the RFC restrictions, concluded Plaintiff could perform light work, and made the resulting disability determination. Not only did he reject the medical opinions in the record, the ALJ's findings contradicted them, and thus the physical limitations appear to be based on the ALJ's own interpretation of the raw medical evidence. It is well-settled that an ALJ may not render his or her own medical opinion or independently assess clinical findings. *See Lail v. Kijakazi*, 2021 WL 4741431, at *7 (E.D. Cal. Oct. 12, 2021) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms."), *cited by Diane K. v. Kijakazi*, No. 1:20-cv-00520-DKG, 2022 WL 3213076, at *4 (D. Idaho Aug. 9, 2022).

"When an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb. 1, 2011). Indeed, "courts within the Ninth Circuit

**MEMORANDUM DECISION AND ORDER  - 12**

routinely find error where an ALJ rejects all medical source opinions and formulates an RFC based on the ALJ's own interpretation of the medical record." *Betten v. Saul*, 2019 WL 3939028, at *6 (D. Nev. July 9, 2019) (citing cases); *see also Peter B. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3010162, at *3 (D. Or. July 28, 2022); *Nicole R. v. Kijakazi*, 2021 WL 7286037, at *4 (C.D. Cal. Oct. 5, 2021).

Here, the Court finds the physical limitations included in the RFC are wholly derived from the ALJ's own assessment of the medical records. The ALJ acknowledged Plaintiff's diagnosis and treatment for low back pain, but noted that the records were very limited. (AR 1108.) He set forth in narrative terms Plaintiff's treatment following his 2019 knee surgery. (AR 1107 – 1108.) But, there simply are no medical opinions or other evidence assessing Plaintiff's physical limitations from the combination of his osteoarthritis of the left knee and low back condition. The ALJ does not identify evidence to support the RFC findings that Petitioner could stand and walk for four hours total in a workday and that he could sit for eight hours in a workday The Court is therefore unable to surmise from the written decision how the ALJ determined the functional limitations assessed in the RFC and that Petitioner was capable of light work.

It appears the ALJ based his findings upon Plaintiff's reported work at a laundromat and as a manager of an RV park. (AR 1112.) An ALJ may consider work activity, including part-time work, in determining whether a claimant is disabled. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). However, other than the notation that Plaintiff reported working at a laundromat and managing an RV park, there is no evidence in the record concerning the exertional level at which Plaintiff performs this work, whether it is

**MEMORANDUM DECISION AND ORDER  - 13**

full or part time work, or whether the work rises to the level of substantial gainful activity. It is therefore unclear how this evidence supports the walking, standing and sitting limitations assessed by the ALJ.

Absent adequate explanation of the ALJ's reasoning and bases for the limitations assigned in the RFC, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined his own limitations for Plaintiff. *See Nguyen*, 172 F.3d at 35; *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Michelle Ann H. v. Comm'r of Soc. Sec.*, 2019 WL 943395, at * 10 (E.D. Wash. Feb. 26, 2019) ("Once the ALJ rejected all the medical opinions in the record, the basis for the physical limitations in the RFC finding is unclear."); *Perez v. Comm'r of Soc. Sec.*, 2018 WL 721399, at *7-8 (E.D. Cal. Feb. 6, 2018) (finding the ALJ erred by assigning a more restrictive RFC than the physicians in the record based on the ALJ's own review of the record).

Because the ALJ rejected the medical opinions in the record and provided an insufficient explanation of the evidence in the record relied upon to support his conclusion that Petitioner was able to perform a reduced range of light work, the Court cannot determine how the ALJ arrived at the RFC or find that the ALJ's disability determination is supported by substantial evidence. *See Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches conclusions about claimant's…capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence"); *Perez*,

**MEMORANDUM DECISION AND ORDER  - 14**

2018 WL 721399 at *7-8; *Goolsby v. Berryhill*, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (finding that an ALJ erred in including "simple routine tasks" in RFC when the record did not contain medical opinions supporting this limitation); *Shipp v. Colvin*, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since…the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical [RFC] assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record.").

For these reasons, the Court finds the ALJ erred, and this matter will be reversed and remanded for further proceedings.

## **ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that:

1)    The decision of the Commissioner of Social Security is **REVERSED**.

2)    This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)    This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **March 12, 2025**

Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**